[No. 24174-5-I.   Division One.   December 27, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. RODNEY HOBBS, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for appellant.

*Eric Nielsen* of *Washington Appellate Defender Association,* for respondent.

PEKELIS, J.—The State appeals from the trial court's imposition of an exceptional sentence below the standard range. The State contends that the reasons given by the trial court for the exceptional sentence are not supported by the record, and further, that these reasons do not justify an exceptional sentence.

## I

On October 15, 1988, at 11:30 a.m., Jennifer McGuire returned to her apartment to find her ex-boyfriend, Rodney Hobbs, standing inside. Hobbs was angry that she was dating another man and that she had stayed out all night. He demanded to know where her boyfriend lived. When McGuire refused to disclose that information, he became angry and forced her to get into her car. Hobbs proceeded to drive on the wrong side of the road and repeatedly threatened to kill McGuire and himself by crashing the car. Hobbs eventually ran the car into a telephone pole. When McGuire attempted to flee from the vehicle he pulled her back inside, backed the vehicle away from the pole and resumed driving down the street. A short time later the vehicle was stopped by the King County Police and Hobbs was arrested.

Hobbs was charged with kidnapping in the first degree, RCW 9A.40.020. He later entered an *Alford*[1] plea of guilty to an amended charge of kidnapping in the second degree, RCW 9A.40.030. The applicable standard sentencing range consisted of 6 to 12 months' confinement. At the sentencing hearing, the State recommended a term of 6 months' confinement with 1 month converted to community service, 12 months community supervision upon release, and various financial obligations.

The trial court imposed an exceptional sentence downward to 3 months in the county jail and 12 months of community supervision upon release. The court also ordered Hobbs to make restitution to McGuire for damage to her car, to pay court costs and recoupment for defense attorney's fees, and to undergo 12 months of community supervision.

Pursuant to RCW 9.94A.120(3), the trial court entered the following findings and conclusions in support of the exceptional sentence:

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

## FINDINGS OF FACT

1. The defendant currently resides with the victim, Jennifer McGuire, and has lived with her for a period of approximately four months;

2. Ms. McGuire reports that she and Mr. Hobbs are experiencing no difficulty at the current time, that she is not worried for her safety;

3. Mr. Hobbs and Ms. McGuire have current plans to be married;

4. Prior to the scheduled trial in this matter, Ms. McGuire professed to the prosecutor a reluctance to testify in the case against Mr. Hobbs because she was afraid that it would result in a long prison sentence for Mr. Hobbs;

5. At the time of this offense, the defendant and Ms. McGuire had an on–going relationship, the defendant became upset because Ms. McGuire had been on a date with another man, and at the time of the offense Mr. Hobbs was extremely emotionally distraught to the point where he lost his temper;

6. There is no indication that Mr. Hobbs has engaged in conduct of this type previously;

## CONCLUSIONS OF LAW

1. The standard sentencing range for Kidnap [sic] in the Second Degree is 6 to 12 months;

2. At the time of the offense, due to the defendant's extreme emotional distress caused by the upset in his domestic relationship with Jennifer McGuire, his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired;

3. Given the current relationship between the victim and the defendant, i.e., the fact that they are residing together with no apparent domestic violence problems and soon intend to be married, a sentence below the bottom of the standard sentence range is appropriate and the Court believes that a sentence of 90 days in the King County Jail constitutes an appropriate punishment in this case.

## II

In reviewing an exceptional sentence, this court must first determine whether the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. As this is a factual determination, the sentencing judge's reasons will be upheld unless they are clearly erroneous. *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990); *State v. Fisher*, 108 Wn.2d 419, 423, 739 P.2d 683 (1987). Additionally, the reasons must be "substantial and

compelling" enough to merit deviation from the standard range as a matter of law. *Estrella,* 115 Wn.2d at 358; *Fisher,* 108 Wn.2d at 423.

The State assigns error to the trial court's conclusions of law 2 and 3. The State claims that there is insufficient evidence to support conclusion 2, that Hobbs' capacity was significantly impaired at the time of the offense. The basis for the State's challenge to conclusion of law 3 is that the finding that Hobbs and McGuire have reconciled, while accurate, should *not,* as a matter of law, justify the imposition of an exceptional sentence downward. Initially, we recognize that the language of conclusion of law 2 tracks the wording of the mitigating factor listed in RCW 9.94A-.390(1)(e). However, if a trial court is to rely specifically upon the quoted statutory language, there must be proof to meet that standard. *State v. Rogers,* 112 Wn.2d 180, 185, 770 P.2d 180 (1989).

In *Rogers,* the trial court found that due to "severe emotional and psychological stress", the defendant's judgment at the time he committed armed bank robbery was "exceptionally impaired, his thinking irrational and his behavior impulsive". *Rogers,* 112 Wn.2d at 184. The Supreme Court held that this finding did not meet the standard of RCW 9.94A.390(1)(e) because the trial court failed to find, based on the evidence, that the defendant's impaired judgment and irrational thinking *resulted* in impaired capacity. The court made clear that the requisite finding on the evidence is a "stringent test". *Rogers,* 112 Wn.2d at 184–85.

In *State v. Allert,* 58 Wn. App. 200, 791 P.2d 932, *review granted,* 115 Wn.2d 1007 (1990), the trial court found that due to depression, compulsive personality and alcohol addiction, the defendant's capacity to appreciate the wrongfulness of his conduct was significantly impaired. *Allert,* 58 Wn. App. at 202–03. The reviewing court applied the *Rogers* analysis and held that the evidence, which included expert testimony that the defendant's ability to perceive and to understand was impaired, supported the trial court's finding. *Allert,* 58 Wn. App. at 208.

24

■ Here, there is evidence to support the trial court's determination that Hobbs was extremely emotionally distressed at the time of the offense. However, as in *Rogers,* there is no proof that this condition significantly impaired Hobbs' capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. More is required to meet the quoted statutory language than Hobbs' own statement at sentencing that he lost his temper or the bare assertion in a presentence report prepared by his attorney that Hobbs was emotionally distraught at the time of the offense. These self–serving assertions, unlike the expert testimony in *Allert,* fail to conform to the "stringent test" of *Rogers.*

Accordingly, we hold that the trial court's reason in conclusion of law 2 for the exceptional sentence, *i.e.,* that Hobbs' capacity was significantly impaired at the time of the offense, is clearly erroneous.

The State next challenges the trial court's conclusion of law 3 that a sentence below the standard range is appropriate because a harmonious domestic relationship existed between Hobbs and McGuire at the time of sentencing. This reason is, in large measure, supported by the evidence.[2] The State contends, however, that reconciliation with a victim of domestic violence should not be recognized as a mitigating factor in sentencing.

■ We agree. If reconciliation in itself were to be considered a mitigating factor, a number of principles of the sentencing reform act would be compromised. First, because it has nothing to do with the seriousness of the offense, treating reconciliation as a mitigating factor frustrates the goal of proportionality of punishment. RCW 9.94A.010(1). In addition, by allowing a later reconciliation to excuse prior violence, the goal of promoting respect for

---

[2]The State correctly asserts that there is no support for the trial court's finding that the two have been together for 4 months. However, the record amply supports the basic thrust of finding 1 and finding 2, that is, that they have reconciled, and McGuire does not fear for her safety.

the law through just punishment would be thwarted. RCW 9.94A.010(2).

Finally, a perpetrator of domestic violence could orchestrate reconciliation thus obtaining a benefit not available to one committing a similar offense but whose victim cannot so easily be manipulated. RCW 9.94A.010(3). Reconciliation does not necessarily demonstrate remorse nor does it even portend that violence will not reoccur. From what is now known about domestic violence, reconciliation is often meaningless, since a cyclical pattern of violence, then calm, is common.

We conclude that, as a matter of law, allowing subsequent reconciliation between the perpetrator and the victim to justify a sentence below the standard range would defeat the "paramount purpose" of the SRA, punishment, for no meaningful reason. *See Estrella,* 115 Wn.2d at 357.

### III

Finally, Hobbs argues that the exceptional sentence should be sustained on the basis of his limited prior contacts with the law and a lack of misdemeanor convictions. He claims that these establish that he was not predisposed to commit the crime, citing *State v. Nelson,* 108 Wn.2d 491, 740 P.2d 835 (1987).

In *Nelson,* the court held that the defendant's complete lack of misdemeanors and felonies that renders a zero offender score supported the sentencing judge's finding that the defendant lacked the predisposition to commit first degree robbery. *Nelson,* 108 Wn.2d at 498.

In this case, however, the trial court did not make any finding of Hobbs' lack of predisposition to commit the crime. Hobbs urges this court to exercise its authority to sustain an exceptional sentence upon any theory established by the pleadings and supported by the proof, even if the trial court did not consider it. In *State v. Vandervlugt,* 56 Wn. App. 517, 524, 784 P.2d 546 (1990), we relied on the trial court's *own* findings to support the result it had reached. This is quite different from searching the record

for "support" of an exceptional sentence which the trial court based on improper reasons.[3]

The imposition of an exceptional sentence is a decision for the sentencing court to make "in the exercise of *its* discretion . . .". (Italics ours.) RCW 9.94A.390. We do not have the discretion to decide that an exceptional sentence *should* be sustained because we have noted facts in the record which might have supported the sentence, but which the trial court did not rely on at all. Thus, we do not consider Hobbs' alternative theory.[4]

In sum, we do not find the reasons given in support of the exceptional sentence imposed in this case to be supported by the record or to be substantial or compelling. Thus, we reverse and remand for resentencing.

GROSSE, A.C.J., and WINSOR, J., concur.

Review denied at 116 Wn.2d 1022 (1991).

---

[3]We find no authority for application to sentencing cases of the maxim that the trial court's result can be sustained on any ground in the record.

[4]Hobbs' final contention that his feelings of remorse and strong family support, although not relied on by the trial court, justify an exceptional sentence fails for the same reason. Moreover, there is no evidence to support this theory, and the Department of Corrections presentence report suggests exactly the opposite. The report states Hobbs "minimized his involvement in the instant offense and attempted on several occasions to place blame on the victim."